JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

ALBERT B. SAMBAT (CABN 236472)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, CA 94102
    Telephone:  (415) 436-7129
    Facsimile:  (415) 436-7234
    Email: albert.sambat2@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSE DAVID TORRES-PAVON,<br><br>    Defendant. | No. CR 07-0697-01 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Court: Hon. Charles R. Breyer<br>Hearing: February 20, 2008 at 10:00 a.m. |

## I. INTRODUCTION

On December 5, 2007, Jose David Torres-Pavon pled guilty to one count of Illegal Re-entry in violation of 8 U.S.C. Section 1326. Under the Guidelines, Torres-Pavon's final offense level is 21, his criminal history category is VI, and his guidelines range is 77-96 months. The Probation Department has recommended a downward departure pursuant to U.S.S.G. Section 4A1.3(b) and a term of imprisonment of 65 months. The United states of America respectfully disagrees with the Probation Department's recommendation and files this Sentencing Memorandum in support of its recommendation that this Court impose a sentence at the low end of the defendant's guidelines range, 77 months imprisonment.

//

**UNITED STATES' SENTENCING MEMORANDUM**
**CR 07-0697-01 CRB**

## II. BACKGROUND OF FACTS

On October 10, 2007, Immigration and Customs Enforcement officers encountered the defendant Jose David Torres-Pavon pursuant to his release from the San Francisco County jail. After being advised of his Miranda/Consular Notification Rights, Torres-Pavon voluntarily provided a signed sworn statement on October 12, 2007, admitting that he entered the United States illegally by crossing the international border on September 27, 2006, at San Ysidro, CA. Torres Pavon also admitted in his sworn statement and in a prior sworn statement dated September 1, 1999, that he was a native and citizen of Honduras.

Torres-Pavon's official Alien Registration File contains four (4) executed Warrants of Removal/Deportation. The warrants indicate that he was previously deported from the United States to Mexico on May 13, 1995, October 9, 1996 and May 11, 1999. His most recent prior deportation was on April 10, 2001 whereby he was deported through Phoenix, Arizona, to Honduras.

In addition, a certificate of non-existence was obtained on October 15, 2007 from Immigration and Citizenship Services confirming that there is no record that the defendant ever applied for or obtained permission from the Attorney General or Secretary of Homeland Security to re-enter the United States.

## III. UNITED STATES' RECOMMENDED SENTENCE

The United States respectfully request that the Court impose a sentence of 77 months imprisonment which is at the low end of the Sentencing Guidelines for Offense Level 21 and Criminal History Category of VI. Although the Guidelines are now advisory, *United States v. Booker*, 543 U.S. 220 (2005) makes clear that the sentencing court is required to consider the Guidelines "sentencing range established for the applicable category of offense committed by the applicable category of defendant" in imposing sentence. *Id.* at 260 (quoting 18 U.S.C. § 3553(a)(4)). The Guidelines sentence is also reasonable in light of the factors set forth in 18 U.S.C. § 3553(a). Among the factors under 18 U.S.C. § 3553(a) that a sentencing court must consider in addition to the sentence specified by the Guidelines are:

(1) the nature and circumstances of the offense and the history and characteristics of the

**UNITED STATES' SENTENCING MEMORANDUM**
**CR 07-0697-01 CRB**                    2

defendant;

(2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentencing range established for--

    (A)    the applicable category of offense commited by the applicable category of defendant as set forth in the guidelines–.....

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;....

Probation has recommended a downward departure pursuant to U.S.S.G. § 4A1.3(b)(1) on the basis that the defendant's criminal history category over-represents the seriousness of the defendant's criminal history. U.S.S.G. § 4A1.3(b)(1) provides:

> "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."

It appears that a downward departure is not warranted in this case since the defendant's criminal history category does not substantially over-represent the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes. On the contrary, the defendant's criminal history accurately indicates a propensity on the part of the defendant to commit drug related crimes and to continually violate the immigration laws of the United States. As the presentence investigative report illustrates, on at least three occasions, the defendant's probation or supervised release was revoked due to subsequent crimes he would commit after his release from custody on a prior conviction. Such history evinces a likelihood that the defendant

**UNITED STATES' SENTENCING MEMORANDUM**
**CR 07-0697-01 CRB**    3

will continue to commit other crimes.  Furthermore, the factors under § 3553(a)(2) (A) and (B) are of particular concern to the government.  Having previously been convicted of a violation of 8 U.S.C. § 1326, (Criminal Docket No. 97 CR 00262-001 SI), the defendant clearly disregarded the law forbidding him from illegally reentering the United States.  This repeated violation of the immigration statute suggests that the defendant has yet to be deterred by his prior sentences, lacks an understanding of the seriousness of the offense, or lacks respect for the law altogether.  The Court should impose a term of custody that sends a clear message that the defendant's conduct cannot be tolerated.

The United States' recommended sentence of 77 months imprisonment will impress upon the defendant the severity of his criminal conduct and will meet the sentencing objectives of deterrence, promoting respect of the law, and providing a just punishment.  Furthermore, given the defendant's history of recidivism, the above recommended sentence appropriately addresses the history and characteristics of the defendant and the need to protect the public from further crimes of the defendant.

### IV.  CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a custody sentence of 77 months imprisonment, 3 years of supervised release, and a $100 special assessment.

DATED: February 11, 2008                    Respectfully Submitted,

                                            JOSEPH P. RUSSONIELLO
                                            United States Attorney


                                            /s/ Albert B. Sambat
                                            ALBERT B. SAMBAT
                                            Special Assistant United States Attorney

**UNITED STATES' SENTENCING MEMORANDUM**
**CR 07-0697-01 CRB**                    4